IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEI KE,<br><br>                Plaintiff,<br><br>    v.<br><br>DREXEL UNIVERSITY, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 11-6708 |

**OPINION**

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**October 4, 2013**

## I.　INTRODUCTION

Plaintiff seeks reconsideration of two Orders of this Court in the above-captioned case. First, Plaintiff seeks reconsideration of this Court's July 12, 2013 Order (Doc. No. 127), which denied Plaintiff's Third Motion to Amend the Complaint. (Doc. No. 133.) In the Third Motion to Amend the Complaint, Plaintiff reargued his Second Motion to Amend, which sought to add two counts, the first one alleging claims under Amendments to the Americans with Disabilities Act ("ADAAA") and the Rehabilitation Act of 1973, and the second one alleging a claim of "racially motivated breach of contract" under 42 U.S.C. § 1981(b). (Id.)

In his original Complaint, filed on November 18, 2011, Plaintiff did not include claims under the ADAAA or the Rehabilitation Act of 1973. (Doc No. 4.) On December 5, 2011, Plaintiff filed the First Amended Complaint. (Doc. No. 7.) On February 1, 2012, Plaintiff filed the First Motion to Amend the Complaint. (Doc. No. 15.) On May 22, 2012, Plaintiff filed the Second Amended Complaint. (Doc. No. 29.) In neither the original Complaint, the First

1

Amended Complaint, nor the Second Amended Complaint did Plaintiff include claims under the ADAAA or the Rehabilitation Act of 1973. Plaintiff first sought to add claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 in his Second Motion to Amend, filed on May 15, 2013. (Doc. No. 107 at 4-7.) On June 4, 2013, the Court denied Plaintiff's Second Motion to Amend. (Doc. No. 116.)

On June 8, 2013, Plaintiff filed the Third Motion to Amend, seeking to add claims under the "ADA/ADAAA" and the Rehabilitation Act of 1973, as well as a claim for "racially motivated breach of contract" under § 1981(b). (Doc. No. 117.) In an Order dated July 12, 2013, the Court denied Plaintiff's Third Motion to Amend. (Doc. No. 127.) On July 25, 2013, Plaintiff filed a Motion for Reconsideration of the Order denying the Third Motion to Amend, again seeking to add claims under the ADAAA and the Rehabilitation Act of 1973, and a claim for "racially motivated breach of contract" under § 1981(b). (Doc. No. 133.)

Second, Plaintiff seeks reconsideration of this Court's August 26, 2013 Order (Doc. No. 158), which granted Defendants' Partial Motion to Dismiss. (Doc. No. 159.) In the Third Amended Complaint, Plaintiff included claims previously dismissed and named as a defendant John Fry, President of Drexel College of Medicine. (Doc. No. 135.) The Court had previously dismissed John Fry as a defendant in an Opinion dated March 14, 2013. (Doc. No. 68.) In response to the Third Amended Complaint, Defendant filed a Motion to Dismiss the claims reinstated without Court approval and sought the dismissal of John Fry once again as a defendant. (Doc. No. 141.) As noted, on August 26, 2013, the Court granted the Motion to Dismiss. (Doc. No. 158.) Plaintiff then filed the second Motion for Reconsideration, seeking to add John Fry back as a defendant. (Doc. No. 159.)

The Court has attempted to parse out the allegations Plaintiff raises in both Motions for Reconsideration. For reasons that follow, the Court will deny Plaintiff's Motion for Reconsideration of the Order dated July 12, 2013 denying the Third Motion to Amend the Complaint (Doc. No. 133) and the Motion for Reconsideration of the Order dated August 26, 2013 denying the Motion to Dismiss (Doc. No. 159).

## II. BACKGROUND

In the fall of 2008, Plaintiff began medical school at Drexel College of Medicine ("DCM"). Sometime after his second year, he was dismissed from school and then readmitted on a conditional status to retake his second year. (Doc. No. 29-4 at 45.) On January 3, 2011, during Plaintiff's third year of medical school, Plaintiff was notified that he had failed both the Family Medicine rotation and the Family Medicine shelf exam.[1] (Doc. No. 29 ¶29.) Plaintiff also failed the Step 1 exam.[2] On February 10, 2011, Plaintiff took the Step 1 exam for a second time and failed. (Id. ¶45.) On February 14, 2011, Plaintiff received a letter from DCM placing certain conditions on Plaintiff's continued enrollment, including receipt of at least a "Satisfactory" grade on all required exams. (Doc. No. 29-4 at 45.) Plaintiff then received a grade of "Marginal Unsatisfactory" on his OB/GYN shelf exam and was dismissed from DCM in accordance with the February 14, 2011 letter. (Id. at 46.)

On April 11, 2011, Plaintiff was notified of his dismissal by a letter from Amy Fuchs, Associate Dean for Student Affairs. (Doc. No. 7-3 at 32.) The letter stated that Plaintiff had the right to appeal his dismissal. (Id.) On May 9, 2011, Plaintiff exercised his right to appeal by sending a letter to the Promotions Committee asking for review of his dismissal. (Doc. No. 7-3

---

[1] A "shelf exam" tests a student's knowledge of the area of medicine studied during the rotation.

[2] Step 1 is the first of the three-part United States Medical Licensing Examination. Passing the three-part examination is required to obtain initial medical licensure.

at 34-35.) On May 14, 2011, Plaintiff was notified in writing that the Promotions Committee had voted to deny his appeal. (Id. at 37.) The letter from the Promotions Committee stated that Plaintiff could appeal this decision to Richard Homan, President and Annenberg Dean of DCM. (Id.) Plaintiff again exercised his right to appeal by sending a letter to Homan, dated June 7, 2011. (Doc. No. 7-4 at 2-4.) Homan upheld the decision of the Promotions Committee and informed Plaintiff that his decision was final. (Id. at 11.)

Plaintiff then emailed John Fry, President of DCM, requesting a hearing under the Federal Educational Rights and Privacy Act ("FERPA"). (Id. at 15-16.) In response, Fry agreed to review Plaintiff's dismissal and assigned the review to David Ruth, Dean of Students. (Id. at 17.) Ruth consulted with Homan, who informed Plaintiff that his email would be treated as a request to amend his educational records under FERPA, and that Homan would confer with the University Registrar to determine whether to grant Plaintiff's FERPA request. (Id. at 19.) Joseph Salomone, University Registrar, then emailed Plaintiff informing him that a hearing under FERPA was not available for his matter. (Id. at 21.) Salomone explained:

> I have considered all of the information you have provided to me and have determined that this is not a matter for which a hearing is available under the Drexel University FERPA Policy. This is because you are attempting to use the FERPA amendment process to challenge a grade and a clinical evaluation.
>
> The College of Medicine has an established process under which students can appeal a clinical grade/or evaluation. The record indicates that you followed this appeal process but that your appeal was denied. As a result of this appeal, the grade and evaluation that are recorded in your Family Medicine Student Clinical Rotation Final Evaluation Report were upheld. While I fully understand why you disagree with the grade and evaluation, the fact is that your Final Evaluation Report correctly and accurately records the grade that was assigned to you by the faculty of that course. Since the education record being challenged is not inaccurate, misleading or an invasion of your privacy, your request for an amendment cannot be granted.

4

As Salomone explained, because Plaintiff's Final Evaluation Report accurately recorded his grade and the education record that Plaintiff challenged was not inaccurate or misleading, a FERPA hearing would not be held. (Id.)

### III. STANDARD OF REVIEW

Local Rule 7.1(g) of Civil Procedure for the Eastern District of Pennsylvania allows a party to make a motion for reconsideration. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Burger King Corp. v. New England Hood & Duct Cleaning Co., No. 98-3610, 2000 U.S. Dist. LEXIS 1022 (E.D. Pa. Feb. 4, 2000) (internal quotations omitted)). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D.Pa. 1995). Courts will consider an issue only "when there has been an intervening change in the controlling law, when new evidence has become available, or when there is a need to correct a clear error or prevent manifest injustice." NL Industries, Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 324 n.8 (3d Cir. 1995). Mere dissatisfaction with the Court's ruling is not a proper basis for reconsideration. Glendon Energy Co. v. Borough of Glendon, 836 F.Supp. 1109, 1122 (E.D.Pa. 1993).

## IV. ANALYSIS

### 1. The Court Will Deny Plaintiff's Request to Add a Claim under the ADA or ADAAA[3]

Plaintiff seeks reconsideration of this Court's denial of Plaintiff's request to add a claim under the ADA Amendments Act of 2008 ("ADAAA"), effective on January 1, 2009. The reasons for that denial are covered in the June 4, 2013 Order. (Doc. No. 116.) In his Motion for Reconsideration, Plaintiff now alleges that the ADAAA somehow changed the law in a way that should permit his ADA claim to go forward as a claim under the ADAAA. The Court disagrees.

"The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" Cordova v. University of Notre Dame, 2013 WL 1332268, at *2 (N.D. Ind. Mar. 29, 2013). The ADA prohibits discrimination on the basis of disability, defining "disability" as 1) a physical or mental impairment that substantially limits one or more major life activities of such individual; 2) a record of such an impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Claims brought under the ADA are subject to the statute of limitations for personal injury claims in the state in which they are raised. See Disabled in Action of Pa. v. SEPTA, 539 F.3d 199, 208 (3d Cir. 2008).

The ADAAA was promulgated to reestablish the original intent of the ADA. Congress found that the Supreme Court had improperly narrowed the protection intended to be afforded

---

[3] The following excerpt is from the hearing held on August 9, 2013:

> The Court: Mr. Ke, you styled this as a Motion for Reconsideration. It's really – based upon what I'm hearing, it really is a motion for leave to amend a complaint to add a claim of a violation of the ADAAA. Would that be accurate?
> Mr. L. Ke: That would be accurate. Yeah, yeah, that would be accurate.

under the ADA. Thus Congress enacted the ADAAA in order to broaden coverage for individuals with disabilities and to clarify how categories of disabilities should be interpreted. See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).

Plaintiff's attempt to bring a claim under the ADAAA against DCM fails for several reasons. Plaintiff alleges as the basis for his disability claim that he has glaucoma and that DCM was made aware of this disability after he was accepted as a medical student in 2008. Plaintiff mentioned his alleged vision disability in his Second Amended Complaint and Second Motion for a Preliminary Injunction, but he did not assert a claim under the ADA or ADAAA. Plaintiff did not allege in his Second Amended Complaint that he is a qualified individual with a disability or that his dismissal as a student at DCM was because of his disability. As the Third Circuit noted in its July 18, 2013 Opinion in an interlocutory appeal taken by Plaintiff in this case:

> [] Ke argues that the District Court erred in failing to address his glaucoma under the Americans With Disabilities Act. There was no reason for the District Court to do so because Ke asserted no claim on that basis even under the liberal construction afforded pro se pleadings, and Ke does not argue otherwise. Ke mentioned his glaucoma several times in his complaint by way of explaining his otherwise-admitted academic failings, but his only request for relief in that regard was that the court order defendants to accommodate his glaucoma after reinstating him as a student. (CM/ECF No. 29 at 50(f).) Ke's glaucoma thus has no bearing on his likelihood of prevailing on any of his actual claims.

Ke v. Drexel, Nos. 13-776 & 13-2263 at 7.

Plaintiff's ADAAA claim also fails because Plaintiff did not request an accommodation as required under the statute. Accommodations can only be made for a person with a known disability who has made such a request. 42 U.S.C. § 12112(b)(5)(A). A request for accommodation must be made in "plain English" and communicated clearly. See, e.g. Boice v.

7

Southeastern Pennsylvania Transp. Auth., 2007 WL 2916188, at *15 (E.D.Pa. Oct. 5, 2007). While Plaintiff contends in the Third Amended Complaint that he failed his exams because he was never given an accommodation for his glaucoma and for this reason the ADAAA applies here, Plaintiff also admits that he never requested an accommodation. (Doc. No. 107 at 4.) Plaintiff states in his Third Amended Complaint:

> In fact, Lei had failed tests in the past because he had a reading disability caused by blurry and double vision as a result of his serious glaucoma, with a quarter of one of his eyes already completely blind. (Exhibit 18). However, although he would be considered a person with a disability under ADA, Lei never asked DCM for accommodation, afraid of jeopardizing his career. By the way, numerous other students failed tests in the past, but they were never taken to task.

(Doc. No. 135 at 17 n.10.)

After admitting that he did not request an accommodation himself, Plaintiff then argues that on July 14, 2010, his father sent an email to Kathleen Kronmiller, the Family Medicine Coordinator, which constituted a request for an accommodation on Plaintiff's behalf. Plaintiff had been assigned to do a rotation at St. Vincent Hospital in Erie, Pennsylvania, and this caused his father to send the email. The July 14, 2010 email from Plaintiff's father states:

> The second reason [Lei Ke should not be assigned to St. Vincent hospital] is Lei Ke has quite serious glaucoma. A quarter of one eye is already blind because the problem was discovered too late. Right now he has to periodically see his eye doctors in Philadelphia.

(Doc. No. 134 at 13-14.)

The impetus for this email was to accommodate Plaintiff's need to see his eye doctors in Philadelphia. No statement in the July 14, 2010 email highlighted that Plaintiff needed any type of accommodation at medical school when taking his exams because of a problem with his vision. Plaintiff was terminated from medical school for receiving an unsatisfactory grade in

8

accordance with the terms of the reinstatement letter, dated February 14, 2010. He was not terminated because he needed to see his eye doctors in Philadelphia. The email from Plaintiff's father is not enough to prove that Defendants had actual or constructive knowledge of a disability suffered by Plaintiff that led to his exam failures and caused his dismissal from medical school.

Next, Plaintiff's attempt to bring a cause of action under the ADAAA is barred by the applicable two year statute of limitations. See Fowler v. UPMC Shadyside, 578 F.2d 203, 207 (3d Cir. 2009). As noted above, claims under the ADA are subject to the statute of limitations for personal injury claims in the state in which they are raised. Under Pennsylvania law, the statute of limitations for a personal injury claim is two years. 42 Pa. Const. Stat. § 5524(2). Plaintiff first attempted to add an ADA claim in his Second Motion to Amend the Complaint, filed May 15, 2013. (Doc. No. 107). That Motion was filed more than two years after his father's July 14, 2010 email and over four years from the time when he was first admitted to DCM, when he claims he told appropriate officials that he had glaucoma and they constructively denied his request for accommodation.[4]

---

[4] In his Reply to his Second Motion to Amend, Plaintiff noted that he never requested an accommodation from DCM for the following reasons:

> Plaintiff intended to ask Parrish [Dean of Student Affairs at DCM] for accommodation in the fall of 2008 and, for that matter, walked into his office one day. But before he was able to ask for accommodation for himself, Parrish detected his purpose, stopped him midsentence, and threatened to punish those students who wanted to seek accommodation for disabilities.

(Doc. No. 112 at 2.) No documentation has been submitted to prove Plaintiff's allegation. As noted, he admits in the Third Amended Complaint that he never requested an accommodation. The Court is required to accept as true the facts in a Complaint as alleged by a plaintiff. The Third Amended Complaint was filed on July 30, 2013. (Doc. No. 135.)

9

Recognizing that the two year statute of limitations bars his claim, Plaintiff argues in the alternative that a four-year statute of limitation should apply to his ADAAA claim because his claim is based on the Amendments promulgated in 2008. (Doc. No. 117 at 4.) Plaintiff cites Cordova v. University of Notre Dame in arguing that his ADAAA claim should be governed by the four year statute of limitations period set forth in 28 U.S.C. § 1658. In 2004, the Supreme Court held that if a cause of action arises under an Act of Congress enacted after December 1, 1990, then it is governed by the four year statute of limitations period set forth in 28 U.S.C. § 1658. See Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 380 (2004). Section 1658 states in part:

> (a) Except otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a). The purpose of § 1658 was to alleviate the "uncertainty inherent in the practice of borrowing state statutes of limitations." Jones, at *382. Plaintiff argues that because his claim arises under the ADAAA, which was promulgated after 1990, this catchall four year statute of limitations should apply.

Plaintiff's argument is unavailing for several reasons. First, as noted above, the ADAAA only applies if Plaintiff's claim was not available under the ADA. This is not the case here. The ADA specifically provides coverage for cases including vision disabilities. Section 12102(2)(A) of the ADA states:

> (2) Major life activities
>
> (A) In general
>
> For purposes of paragraph (1) [definition of disability], major life activities include, but are not limited to, caring for oneself, performing manual tasks, **seeing**, hearing, eating, sleeping,

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

42 U.S.C. § 12102(2)(A) (emphasis added.) Section 3(2)(A) of the ADAAA similarly lists "seeing" as a category under major life activities:

(2) Major Life Activities.

(A) In General – For purposes of paragraph (1) [definition of disability], major life activities include, but are not limited to, caring for oneself, performing manual tasks, **seeing**, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

42 U.S.C. § 12102(a)(2)(A). Since the ADA specifically lists "seeing" under the major life activities that a disability may impair, the ADA clearly covers vision disabilities. The ADAAA did not create a new ground of disability for a vision impairment. Because no new applicable disability was created by the ADAAA in this case, the two year statute of limitations under Pennsylvania tort law and the ADA governs Plaintiff's claim.[5]

Next, Plaintiff relies on Cordova v. University of Notre Dame to support his argument that the four year statute of limitations should apply. (Doc. No. 207.) The plaintiff in Cordova alleged that she was not accommodated for her cognitive learning disability. Cordova, 2013 WL 1332268 at *1. The plaintiff argued that several of the changes enacted by the ADAAA directly impacted her claims, which in turn triggered the four year statute of limitations under § 1658.

---

[5] Plaintiff contends that prior to the ADAAA, the Equal Employment Opportunity Commission ("EEOC") did not consider glaucoma to be a disability. (Doc. No. 178 at 3.) Plaintiff cites Drummond v. Caldera, Secretary of the Army, 2000 WL 1368181 (EEOC), in which a petitioner with glaucoma and diabetes was held not to be disabled under the ADA. (Doc. No. 139 at 3.) The court based this finding on a lack of documentation in the record that Petitioner's impairments affected a major life activity. Plaintiff attempts to infer from Drummond that he too would not have been considered disabled under the ADA. However, the fact that the petitioner in Drummond failed to present sufficient evidence for the court to conclude he was disabled because of his glaucoma does not mean that all petitioners with glaucoma would meet the same fate. Accordingly, Plaintiff's argument fails.

11

The Cordova court held that "a learning disability that substantially limits a person's ability to learn, think, and concentrate (activities of central importance to daily life) is precisely the type of disability the ADA has always sought to protect," and therefore was not created by the ADAAA. Id. at 11. In language that is equally applicable here, the court stated:

> Taking her at her word and relying on the facts as stated in the complaint, Cordova has alleged disability-based discrimination claims that would have been actionable under the original terms and provisions of the ADA; her claims were not created by the recent amendments which simply clarified the existing statute by restoring its original intent and broad scope. Thus, Cordova's claims are subject to Indiana's two-year statute of limitations period for personal injury actions.

Id. at 13.

In addition, Plaintiff contends that the July 14, 2010 email from his father extended the statute of limitations by triggering the "continuing violation doctrine." (Doc. No. 178 at 3.) In his letter dated August 11, 2013, Plaintiff states: "The denial of accommodation in 2010 was a violation and triggered the continuing violation doctrine. That would make the constructive denial in the fall of 2008 actionable." (Doc. No. 207 at 1.) The continuing violation doctrine allows a plaintiff to pursue a claim for discrimination for an act that occurred prior to the filing period if he can show that the discriminatory act is part of a continuing practice or pattern of discrimination. Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). However, in order for the continuing violation doctrine to apply, a plaintiff must demonstrate that at least one discriminatory act occurred within the filing period and that the discrimination is part of an ongoing pattern, rather than an isolated or sporadic act. West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995).

Plaintiff fails to allege that at least one discriminatory act occurred within the filing period. Plaintiff argues that the July 14, 2010 email from his father led to a discriminatory act.

But the email does not contain a request for an accommodation to assist Plaintiff in his studies at DCM. As described above, without a request for an accommodation, there can be no denial and therefore no discrimination under the ADA or ADAAA. Since the July 14, 2010 email from Plaintiff's father does not constitute a request for an accommodation, it cannot trigger the continuing violation doctrine. Without establishing a discriminatory act during the filing period, Plaintiff cannot plausibly show that the continuing violation doctrine should apply. Furthermore, no ongoing pattern of disability discrimination has been alleged.

For all of these reasons, the Court will deny Plaintiff's request to add a claim under the ADA or ADAAA.

### 2. Plaintiff May Not Add a Claim for "Racially Motivated Breach of Contract"

In his Motion for Reconsideration of the Order on the Motion to Amend, Plaintiff states:

> About his breach of contract under § 1981(b), the court should reconsider Ke's third motion and allow it because defense counsel already conceded: "This amendment is necessary because plaintiff essentially asserts the same cause of action under Count I of the Second Amended Complaint." (Doc. 121 at 4.)
>
> Logically, if the count of breach of contract under Pennsylvania law can go ahead, his count of breach of contract under § 1981(b) ought to be allowed to go ahead too since, after all, it shares the same underlying action with other non-dismissed counts under § 1981 and since pleading is not proving. Moreover, discovery, particularly the August 9, 2013 hearing, will specifically cover the subject matter under FERPA to benefit Ke's [§] 1981 and Title VI claims.

(Doc. No. 133 at 2.)

To the extent that Plaintiff is seeking reconsideration of the Court's July 12, 2013 Order (Doc. No. 127) to add a claim for "racially motivated breach of contract" under 42 U.S.C. § 1981(b), this request is denied for the reasons stated in that Order and the Order dated June 4, 2013 (Doc. No. 116.) As the Court noted, Plaintiff fails to allege facts which demonstrate that

13

DCM intentionally discriminated against him on the basis of race. His allegations are conclusory, and as more fully discussed in the Opinion granting in part the Motion to Dismiss the Second Amended Complaint (Doc. No. 68 at 15-19), no inference of racial discrimination arises from the reaction of Dr. Sahar after Plaintiff asked him a medical question in front of a patient. The Court is not obligated to grant leave to amend a claim when doing so would be futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 246, 251 (3d Cir. 2007). Since Plaintiff does not plausibly allege a claim or facts which suggest racial animus under § 1981(b), the Court will not grant leave to amend the Complaint and will deny Plaintiff's request.

### 3. Plaintiff May Not Add John Fry as a Defendant

In the Motion for Reconsideration of the Order denying Defendants' Motion to Dismiss, Plaintiff contends that the dismissal of John Fry, President of DCM, as a defendant "is tantamount to dismissing the violation of Drexel University's FERPA contract," and thus John Fry must be added back as a defendant. Plaintiff makes the following allegations against John Fry in the Third Amended Complaint:

> All defendants participated in retaliation through intentional discrimination, including president of Drexel University, who was responsible because:
>
> (1) The adverse actions all occurred under his watch, so he had responsibility under the respondeat superior theory;
>
> (2) Lei directly appealed to him on July 4, 2010 and he promised to look into the matter (Exhibit 21) but he really sat back to ignore Lei instead of reversing the adverse actions;
>
> (3) His deliberate indifference aided and abetted the administrators like Vice President Ruth, Homan, and the registrar to cause them to refuse to amend Lei's false family medicine record; and

14

> (4) His connivance led Drexel University to further retaliate against Lei by refusing him a formal hearing as stipulated by Federal law FERPA, 34 CFR 99.21(a). In doing so, defendants denied him the right to grieve his family medicine clerkship grade that was **erroneously recorded** in his transcript because he would not have failed the clerkship if Defendants had included the grades of his midblock evaluation and his bio-psychosocial report.

(Doc. No. 135 at 30-31.) (emphasis in original.) These facts, as pled, are insufficient to support the claims against John Fry.

First, there is no evidence that John Fry denied Plaintiff rights under the Federal Educational Rights and Privacy Act ("FERPA"). Plaintiff points to a summary of DCM's academic policies under FERPA, as published on the university website:

> **Right to Request Amendment of Education Record**
>
> The University provides a student with an opportunity to request amendments to the contents of the Education Record which he/she considers to be inaccurate, misleading, or otherwise in violation of his/her privacy or other rights. A School Official who receives such a request will coordinate with the University Registrar and they will decide within a reasonable period of time whether corrective action consistent with the student's request will be taken. The student must be notified of the decision. If the decision is in agreement with the student's request, the appropriate record(s) must be amended. A student who is not provided full relief sought by his/her challenge must be informed by the appropriate School Official in writing, of the decision and his/her right to a formal hearing on the matter.

http://drexel.edu/provost/policies/ferpa.asp (last visited 9/25/13).

Plaintiff sent Fry such a request. Fry did not ignore the request, but instead agreed to review Plaintiff's dismissal and assigned the review to Ruth. Ruth consulted with Homan, who informed Plaintiff that his email would be treated as a request to amend his educational records under FERPA, and that he would confer with the University Registrar to determine whether to grant Plaintiff's FERPA request. The University Registrar then emailed Plaintiff informing him

that a hearing under FERPA was not available for his matter. Thus, Fry was not personally involved in Plaintiff's dismissal, and there is no basis for naming him as a defendant.

Moreover, after appealing his dismissal from DCM to both the Promotions Committee and Homan, Plaintiff attempted to request that his educational records be amended under FERPA. (Id. at 15-16.) Homan conferred with the University Registrar, Joseph Salomone, who then informed Plaintiff in an email that a hearing under FERPA was not available for Plaintiff's matter. He noted that Plaintiff followed the appeal process and the appeal was denied. As Salomone further noted:

> While I fully understand why you disagree with the grade and evaluation, the fact is that your Final Evaluation Report correctly and accurately records the grade that was assigned to you by the faculty of that course. Since the education record being challenged is not inaccurate, misleading or an invasion of your privacy, your request for an amendment cannot be granted.

(Doc. 7-4 at 19.) In accordance with DCM's FERPA policy, only inaccurate or misleading records may be challenged through the FERPA process.

Additionally, Plaintiff may not bring a private right of action under FERPA. Congress did not include in FERPA a private right of action to enforce its provisions. See, Millington v. Temple University School of Dentistry, 2006 WL 83447, at *3 (E.D.Pa. Jan. 9, 2006). Instead, it empowers the Secretary of Education to enforce FERPA by denying funding to offending institutions. Id. For this reason, Plaintiff agreed that his claim under FERPA alleged in Count VI of the Second Amended Complaint should be dismissed. The FERPA claim was originally dismissed on March 14, 2013 (Doc. No. 69) and again on August 26, 2013 (Doc. No. 158), after Plaintiff re-alleged it in the Third Amended Complaint. Accordingly, there is no right of action in the text of FERPA that would allow a private party to enforce a violation.

## V. CONCLUSION

Because Plaintiff has not satisfied any of the legal requirements for reconsideration of prior rulings, the Court will deny Plaintiff Lei Ke's Motion for Reconsideration of the Motion to Amend the Complaint (Doc. No. 133) and Motion for Reconsideration of the Motion to Dismiss (Doc. No. 159). An appropriate Order follows.