IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEI KE,<br><br>                Plaintiff,<br><br>     v.<br><br>DREXEL UNIVERSITY, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 11-6708 |

**OPINION**

**Slomsky, J.**                                                                                                               **March 20, 2014**

**I.     INTRODUCTION**

In the instant case, Plaintiff asserts claims of discrimination and retaliation because of his Chinese ethnicity by Drexel College of Medicine ("DCM" or "Defendant") and other Defendants involved in his dismissal as a medical student. (Doc. No. 135 at ¶1.) In support of his claims, Plaintiff contends that he received disparate treatment when compared to similarly situated medical students who had a different ethnicity. He argues that he needs information about the personal identity of these students and their student files in order to prove his case. He also argues that he should be permitted at scheduled depositions to ask questions about the students, some of whom are specifically named in his Third Amended Complaint or he knew when he attended DCM. Defendants have objected to the release of the student files and information about their personal identity relying on the provisions of the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. In addition, they claim that at the depositions

1

Plaintiff should be precluded from asking questions that would reveal the identity of the medical student, again relying on the privacy provisions in FERPA.

## II.     BACKGROUND

In the fall of 2008, Plaintiff began medical school at DCM. Sometime after his second year, he was dismissed from school and then readmitted on a conditional status to retake his second year. (Doc. No. 29-4 at 45.) On January 3, 2011, during Plaintiff's third year of medical school, Plaintiff was notified that he had failed both the Family Medicine rotation and the Family Medicine shelf exam.[1] (Doc. No. 29 ¶29.) Plaintiff also failed the Step 1 exam.[2] On February 10, 2011, Plaintiff took the Step 1 exam for a second time and failed. (Id. ¶45.) On February 14, 2011, Plaintiff received a letter from DCM placing certain conditions on Plaintiff's continued enrollment, including receipt of at least a "Satisfactory" grade on all required exams. (Doc. No. 29-4 at 45.) Plaintiff then received a grade of "Marginal Unsatisfactory" on his OB/GYN shelf exam and was dismissed from DCM in accordance with the February 14, 2011 letter. (Id. at 46.)

On October 26, 2011, Plaintiff commenced the instant action. (Doc. No. 1.) In his Third Amended Complaint, Plaintiff asserts claims of discrimination and retaliation by DCM and others. (Doc. No. 135 at ¶1.) Plaintiff claims that in order to prove his case he needs to compare himself to other students. In his Third Amended Complaint, Plaintiff identifies three students he claims were similarly situated to him but, he alleges, were treated more favorably: (1) Cyrus Hadadi (Id. at ¶ 27); (2) Shannon Toccio (Id. at ¶¶ 47, 83); and (3) Heidi Baer (Id. at ¶ 97).

On August 27, 2013, Plaintiff filed his First Set of Interrogatories and Requests for Production of Documents, seeking the identities of additional students and their student files.

---

[1] A "shelf exam" tests a student's knowledge of the area of medicine studied during the rotation.

[2] Step 1 is the first of the three-part United States Medical Licensing Examination. Passing the three-part examination is required to obtain initial medical licensure.

(Doc. Nos. 162, 163.)  Plaintiff contends that he can only prove his case by obtaining identifying information about students who he claims were treated differently from him and their medical school files.  Specifically, Plaintiff seeks the identity of students who: (1) completed their Family Medicine clerkship in Monmouth, New Jersey; (2) were required to repeat Academic Years 1 or 2; (3) were brought back to Philadelphia to complete their clerkships; (4) appeared before the Promotions committee on June 9, 2009; (5) failed the Step 1 examination; (6) were given more than nineteen months or three attempts to pass the Step 1 exam; (7) failed three or more courses in the same year; (8) received Marginal Unsatisfactory grades in their Third and Fourth years; (9) failed Clinical Rotations; or (10) were permitted to take make-up shelf examinations.  (Doc. No. 163.)

Defendants objected to providing the identities of such students in response to these requests on the basis of FERPA and its implementing regulations, 34 C.F.R. §§ 99.1 et seq. (Doc. No. 164.)  The following provisions of FERPA are relevant here:

> (b) Release of education records; parental consent requirement; exceptions; compliance with judicial orders and subpoenas; audit and evaluation of federally-supported education programs; recordkeeping.
>
> (1) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization, other than to the following . . .
> * * *
>
> (2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory

3

>information, or as permitted under paragraph (1) of this subsection, unless –
>
>(A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or
>
>(B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena . . .

20 U.S.C. § 1232g(b)(1), (b)(2)(A) and (B). "Personally identifiable information," is defined in 34 C.F.R. § 99.3 as follows:

>Personally identifiable information.
>
>The term includes, but is not limited to –
>
>(a) the student's name;
>
>(b) the name of the student's parent or other family member;
>
>(c) the address of the student or student's family;
>
>(d) a personal identifier, such as the student's social security number, student number, or biometric record;
>
>(e) other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;
>
>(f) other information that, along or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or
>
>(g) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

34 C.F.R. § 99.3.

Without revealing the names of the students or other personally identifiable information, Defendants did, however, produce in discovery spreadsheets with the following information: (1) the ethnic background of students who completed evaluations of the Monmouth Family Practice Clerkship during the period 2007 through 2011; (2) the ethnic background, status, and circumstances of students who were required to repeat Academic Years 1 or 2 during the period of 2006 through 2011; (3) the ethnic background and circumstances of students who were brought back to Philadelphia to complete their Clerkships between the Fall of 2007 and July 2011; (4) the ethnic background, status, and circumstances of students who appeared before the Promotions Committee on June 6, 2009; (5) the ethnic background, grade, start date, applicable Clerkship, reason for failure, and circumstance and outcome of students who failed Third Year Clerkships between 2007 and July 2011; (6) the ethnic background, status, and circumstances of students who failed three or more courses from the Fall of 2007 through July 2011; (7) the ethnic background of students who completed the Second Year of medical school in May 2009 and failed Step 1 on the first attempt and their outcome with respect to the Step 1 exam; (8) students who, from Fall 2007 through Jun 2011, were given more than eighteen months and/or more than three attempts at Step 1, their ethnic backgrounds, and the circumstances under which a fourth/fifth try at Step 1 was permitted; (9) students who received final grades of Marginal Unsatisfactory in their Third Academic year from Fall 2007 through June 2011 and indicating whether they were dismissed or not; and (10) a roster of students who took a make-up shelf exam at the Queens Lane campus on or about December 29, 2010 (when Plaintiff took the make-up Shelf Exam for Family Medicine), their ethnic background, and whether or not they were dismissed and why. (Doc. No. 249.) On these spreadsheets, students are identified by a number,

and defense counsel has kept a log correlating the number to the names of the students. These spreadsheets were filed of record on October 21, 2013. (Id.)

As noted above, Plaintiff has requested that Defendants identify the students referenced in the spreadsheets by name and produce in discovery their student files. Defendants object, arguing that such production would violate the privacy requirements of FERPA. The Court discussed the requirements of FERPA and this discovery dispute at hearings held on August 9, 2013 and October 18, 2013. At the hearings, the Court instructed defense counsel to prepare a letter to send to students who were listed in the above categories in order to notify them about the instant lawsuit and to inquire whether they objected to Defendants providing Plaintiff with their un-redacted student records or their identity on the spreadsheets. At the October 18, 2013 hearing, the Court also ordered defense counsel to provide for the Court's review both redacted and un-redacted copies of the student records for the students listed in the spreadsheets.

Pursuant to the instructions of the Court at the October 18, 2013 hearing, defense counsel drafted form letters to be mailed to the students identified in the spreadsheets. Plaintiff raised specific objections to the draft letters. (Doc. No. 291.) On November 26, 2013, the Court entered an Order instructing defense counsel to make certain changes to the letters and to mail the letters to the students. (Doc. No. 308.) The final version of the various letters have been filed of record. (Doc. No. 332.)

On December 12, 2013, defense counsel mailed the form letter to 106 students listed on the spreadsheets and the form letter to two of the students specifically named by Plaintiff in the Third Amended Complaint. (Id.) Defense counsel noted that he was unable to obtain addresses for ten students referred to in the spreadsheets or for the third student specifically named in the Third Amended Complaint. (Id.)

The letters contain two questions:

> Question 1: Please check one:
>
> ___ I object to Drexel University identifying me as No. <<ID>> on any of the referenced spreadsheets.
>
> ___ I do not object to Drexel University identifying me as No. <<ID>> on any of the referenced spreadsheets.
>
> Question 2: Please check one:
>
> ___ I object to Drexel providing to plaintiff a copy of any of my student records or other documents which contain any personally identifying information.
>
> ___ I do not object to Drexel providing to plaintiff a copy of any of my student records or other documents which contain any personally identifying information.

(Doc. No. 322 at 14.)

Defense counsel received fifty-five responses to these letters. Fifty-one students did not respond. Of the fifty-five responses, forty-four students objected in response to the first question, and fifty-three students objected in response to the second question. Ten students did not object in response to the first question, and two students did not object in response to the second question. Forty-five students objected in response to both questions. Defense counsel has provided the Court with a copy of all responses.

On January 2, 2014, defense counsel also provided the Court with both redacted and un-redacted copies of the student medical school files.[3] The records are organized by the categories listed on the spreadsheets. For example, the first file contains the evaluations of the Monmouth Family Practice Clerkship that were completed by students during the period of 2007 through 2011, along with a list identifying each student's ethnic background. The redacted version of

---

[3] The redacted and un-redacted copies of the student medical school files, along with the responses to the letters, will be filed of record under seal.

7

that file contains the same documents, but with the students' names replaced by numbers that correlate to the spreadsheets. The second file contains the records of students who were required to repeat Academic Years 1 or 2 from 2006 to 2011, along with a list identifying each student's ethnic background. The redacted version of that file contains the same documents, but with the students' names, addresses, and student ID numbers covered with black ink. The same pattern is true for the remaining files with the other categories of documents listed on the spreadsheets. The Court has reviewed these files and is satisfied that the redacted versions do not contain personally identifiable information about the students.

Previously, on November 27, 2013, the Court entered an Order imposing certain restrictions on questions that Plaintiff could ask during depositions. (Doc. No. 317.) The Court prohibited Plaintiff from asking questions regarding personally identifiable information about any medical student other than Plaintiff. (Id. at 1.) The Court did so because students had not yet been provided with notice or the opportunity to object to the release of their personally identifiable information. Recently, Plaintiff filed a Motion for Clarification of that Order. (Doc. No. 435.) Plaintiff asserted that the Order was too restrictive and requested that he be allowed to ask questions he believes are important about students at the upcoming depositions of Drs. Dalton and Sahar and others. (Id.) The Court will consider here Plaintiff's request, as well as whether under FERPA personally identifiable information should be made available to him for the students who objected, did not object, or did not respond to the letters sent by DCM at the direction of the Court, or even for the eleven students who did not receive a letter.

### III. ANALYSIS

#### A. FERPA Protects the Privacy of Medical Student Files

FERPA applies to all educational institutions or agencies that receive funds under federal programs administered by the U.S. Commissioner of Education. FERPA establishes minimum

8

standards for the protection of a student's privacy and other rights, and enforces such standards by authorizing the denial of funds to educational institutions and agencies that fail to meet these prerequisites. 20 U.S.C. § 1232g.

As described above, the provisions of FERPA that are relevant to the instant case are found in 20 U.S.C. § 1232g(b), which pertain to the release of educational records to third-parties. Section 1232g(b)(1) prevents the unrestricted release of a student's education records or any "personally identifiable information" contained in such records to unauthorized individuals or organizations without the consent of the student and/or parents. See Mattie v. Johnson, 74 F.R.D. 498, 501 (N.D. Miss. 1976). Education records are those records or documents maintained by the institution or agency which "contain information directly related to a student." 20 U.S.C. § 1232g(a)(4)(A)(i). As noted previously, "personally identifiable information" is defined in 34 C.F.R. § 99.3 to include: (a) the student's name; (b) the name of the student's parent or other family member; (c) the address of the student or student's family; (d) a personal identifier, such as the student's social security number, student number, or biometric record; (e) other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; (f) other information that, along or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or (g) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates. 34 C.F.R. § 99.3.

When a third-party seeks disclosure of education records covered by FERPA, the trial judge, in exercise of discretion, must conduct a balancing test in which the privacy interests of

the students are weighed against the genuine need of the party requesting the information. Blunt v. Lower Merion School District, No. 07-3100, 2009 WL 1259100, *2 (E.D. Pa. May 7, 2009); Zaal v. State, 602 A.2d 1247, 1256 (M.d. 1992).

Although FERPA does not create a privilege, it does embody the strong public policy of protecting the privacy of student records. In this regard, courts have withheld this information even when relevant to resolving claims before the court. See, e.g., Blunt, 2009 WL 1259100 at *3; Naglak v. Pennsylvania State University, 133 F.R.D. 18, 24 (M.D. Pa. 1990). When privileged information or information protected by privacy concerns is withheld, a party is being deprived of relevant information. However, policy concerns sometimes require the withholding of this information over disclosure to a party who argues that the information is needed for his case.

### B.  The Court Will Make Available in Discovery the Redacted Medical Student Files

Pursuant to § 1232g(b)(2)(A) of FERPA, the Court ordered defense counsel to notify the students identified in the spreadsheets that their educational records had been requested by a party to this litigation and to inquire if they consented to such disclosure. Forty-four students objected to Defendant identifying them by a number on any of the spreadsheets, and fifty-three students objected to Defendant providing Plaintiff with a copy of their records containing identifying information. Ten students did not object to Defendant identifying them by number on the spreadsheets, and two students did not object to Defendant providing Plaintiff with a copy of their records with identifying information. Fifty-one students did not respond at all.

The Court must now decide whether to release to Plaintiff the redacted student files, which delete personally identifying information, or the un-redacted student files with the

personally identifying information. In doing so, the Court will balance the privacy interests of the students against the genuine need of Plaintiff for the information.

Releasing to Plaintiff redacted student files will protect the privacy interests of the students who have objected to release of their personally identifiable information and the privacy interests of the students who did not respond. Deleted from the redacted files is the personally identifiable information, which is the focus of the privacy interest under FERPA. Two students, however, did not object to providing Plaintiff with a copy of their records with identifying information. This constitutes a waiver of their FERPA privacy rights and these two files may be released to Plaintiff with the personally identifiable information.

The fact that fifty-one students did not respond to the letters does not by itself mean that they do not object to the release of their records. The Court will not speculate as to why they did not respond, although it appears that over time many may have relocated and may not have received the letters. In the absence of a response, their privacy rights under FERPA have not been knowingly and voluntarily waived and should be respected by the Court.

This Court is satisfied that despite the identifying information not being made available to Plaintiff, the redacted records that will be provided, as well as the spreadsheets already provided, contain sufficient information to allow Plaintiff to compare himself to other students in order to support his claim that he was treated differently because of his Chinese ethnicity. Plaintiff will be provided with the redacted records of these students, which he can then cross-reference with the spreadsheets. As the court found in Naglak v. Pennsylvania State University, the problem of avoiding disclosure of identifying information under FERPA may be remedied by providing the information requested in statistical, summary form. Naglak, 133 F.R.D. at 24. The spreadsheets and redacted records will provide Plaintiff with the academic performance of the

students and any action taken against them by DCM as a result of that performance. Moreover, Plaintiff is being provided with the ethnicity of each student. This information will enable him to prove his disparate treatment discrimination claim. The fact that he will not receive the names, addresses, or any other identifiable information about the students, although helpful, will not deprive him of the opportunity to prove his case.

        **C.**    **The Court Will Make Available in Discovery the Un-Redacted Files of the Two Students Who Did Not Object to the Release of Personally Identifiable Information**

As noted previously, the identities of the two students who do not object to the release of their personally identifiable information and their un-redacted student files will be released to Plaintiff. Further, the files with the personally identifiable information should contain numbers cross-referenced to the spreadsheets so that Plaintiff will be able to identify the two students on the spreadsheets.

        **D.**    **A Protective Order Will Not Be Entered in this Case to Protect Personally Identifiable Information Under FERPA**

In the alternative, the Court has considered entering a protective order requiring that the personally identifiable information, if released to Plaintiff, be used only for purposes of this lawsuit and remain confidential. A protective order has been used in other cases in which students have objected to the release of their identifying information under FERPA. See, e.g., Blunt, 2009 WL 1259100 at *2. However, the Court will not enter a protective order in this case. Plaintiff here is proceeding pro se, rather than as a member of the bar who is an officer of the court. Based upon Plaintiff being a non-lawyer, and even granting him the latitude afforded to pro se plaintiffs, there is a risk that he will not fully understand or comply with the terms of a protective order. Sometimes pro se parties may not comprehend legal requirements, and given the numerous filings of Plaintiff in this case to date, the Court is concerned that he may

12

unintentionally or inadvertently believe he has the right to reveal personally identifiable information. Accordingly, since the privacy interests of the students outweigh the potential harm they face if their identifying information is released, the Court will not issue a protective order in this case but will instead make available to Plaintiff the redacted files.

> **E.  Plaintiff May Ask Questions at Depositions Regarding the Information in the Redacted Files or Spreadsheets, but Defense Counsel May Instruct Deponents Not to Answer Questions That Would Reveal Personally Identifiable Information About Students**

Plaintiff requests that he be allowed to ask questions about students during upcoming depositions which may reveal their identity. (Doc. No. 435.) He identified by name three students in the Third Amended Complaint, and he may know the names of other medical students. At the depositions, Plaintiff may ask whatever questions he feels are appropriate about the information contained in the redacted files or the cross-referenced spreadsheets. This includes questions regarding the three specifically named students in the Third Amended Complaint. The Court would suggest, however, that rather than attempting to learn the personal identity of students through questions or even inadvertently asking questions that would touch on the subject of identifying information, Plaintiff merely identify the students by number and ask questions about the information in the student files and spreadsheets. Questions about the ethnicity of the students identified by number on the spreadsheets and in the student files are also appropriate. This process will be in accordance with FERPA privacy concerns as expressed in this Opinion.

Defense counsel may instruct the deponents not to answer questions if their answers would involve releasing personally identifiable information about any student, even the three identified by name in the Third Amended Complaint. This limitation is in accordance with the students' rights under FERPA, as discussed above. Under Federal Rule of Civil Procedure

30(c)(2), counsel may instruct a deponent not to answer questions when necessary to enforce a limitation ordered by the court.  <u>Uporsky v. Hayt, Hayt & Landau, LLC</u>, No. 11-1140, 2012 WL 3888214, *3 (M.D. Pa. Sept. 7, 2012).  Because the Court has ordered that the privacy of all students be protected under FERPA, any questions that would violate this order may not be answered.

## IV.     CONCLUSION

For the foregoing reasons, the redacted student files of the medical students will be provided to Plaintiff, along with numbers cross-referencing the student files to the spreadsheets. The un-redacted records of the two students who do not object to the release of their personally identifiable information will be given to Plaintiff.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEI KE,<br><br>            Plaintiff,<br><br>v.<br><br>DREXEL UNIVERSITY, et al.,<br><br>            Defendants. | CIVIL ACTION<br>NO. 11-6708 |

**ORDER**

**AND NOW**, this 20th day of March 2014, upon consideration of Plaintiff's Emergency Motion for Clarification of the Court's Nov. 27, 2013 Order (Doc. 317) (Doc. No. 435), it is **ORDERED** that:

1. Plaintiff's Emergency Motion for Clarification of the Court's Nov. 27, 2013 Order (Doc. 317) (Doc. No. 435) is **GRANTED IN PART AND DENIED IN PART.** The Court's November 27, 2013 Order (Doc. No. 317) is modified as follows: Plaintiff may ask questions at depositions regarding the information contained in the redacted student files and cross-referenced spreadsheets in accordance with the Opinion of the Court dated March 20, 2014.

2. Defendant shall provide Plaintiff with the un-redacted records of the two students who do not object to the release of their personally identifying information.

3. Defendant shall provide Plaintiff with the redacted medical school files of the students listed on the spreadsheets.

4. Defendants shall provide these records to Plaintiff by **5 p.m. on Friday, March 21, 2014**.

                              BY THE COURT:

                              <u>/s/ Joel H. Slomsky</u>
                              JOEL H. SLOMSKY, J.